It cannot be said as a question of law that the plaintiff should have stopped his horse or gotten out of his wagon and gone upon the track and looked before attempting to cross.

While the vigilance of a traveler must be proportioned to the known danger, it is also limited by usual and ordinary signals and evidence of danger. (*Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 454–456.)

The defendant had created a dangerous crossing and then omitted all notice of the approach of trains. The plaintiff had listened for the usual signals while he passed slowly over a distance of 300 feet and heard none. He looked at the first point where he had a view of the track and saw no danger. It was possible for him to have discerned the train if he had gotten out of the wagon and gone upon the track, but whether it was negligent for him to omit that precaution was a question for the jury, not for the court. Whether his conduct was that of an ordinary, prudent and cautious man was a fact to be determined by inference drawn from the evidence, and the question was for the jury.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Pratt and Dykman, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.

---

In the Matter of the Probate of the Paper Propounded as the Last Will and Testament of Mary Snelling, Deceased.

78   211
145a 599

*When the decision of a surrogate admitting a will to probate will not be disturbed on appeal.*

When, in proceedings brought for the probate of a will, the weight of evidence is in favor of the conclusion that when the testatrix executed the will she understood the character of her act and comprehended its consequences, the determination of the surrogate that she was competent to execute the instrument will not be disturbed on appeal.

Appeal by the contestants, John H. Lewis and others, from a decree of the Surrogate's Court of the county of Suffolk, entered in the office of the clerk of the Suffolk County Surrogate's Court on

SECOND DEPARTMENT, MAY TERM, 1894.          [Vol. 78.

the 9th day of October, 1893, admitting to probate the instrument offered as the last will and testament of Mary Snelling, deceased, and also from an order entered in said clerk's office on the 9th day of October, 1893, denying the contestants' motion for a new trial made upon the minutes, and also from the facts, exceptions and rulings taken upon the trial.

*L. S. Beckley,* for the contestants, appellants.

*Thomas Young,* for the proponents, respondents.

BROWN, P. J.:

When this case was before the Court of Appeals on a prior appeal the conclusion of the surrogate that the will was not the product of undue influence, and that the decedent possessed the necessary testamentary capacity to execute it, was not disturbed.

The decree then before the court was reversed for the erroneous admission of improper testimony.

Some new testimony was introduced upon the last hearing, but, after a careful examination of the whole case, I do not think it is changed in any essential feature from that presented on the first appeal. The evidence would not permit the conclusion that Mr. and Mrs. Cook exerted any undue influence upon Mrs. Snelling.

The important question is whether she possessed testamentary capacity.

That her mind was weak and that she was at times insane is clearly shown. But the periods of her insanity were generally of short duration and existed when she was sick. When she recovered from her sickness her mental powers returned and she was capable of taking care of herself and her property.

The will in question was executed on June 24, 1890. For about a year prior to that date she had resided with Mrs. Denton, and her mode of life and her physical and mental condition during that period have been fully described by that witness. During that time she had no sickness requiring the attendance of a physician, and her memory was fairly good, and she attended to and transacted her own business.

She appears to have understood the nature and condition of her property and the disposition which, by will or otherwise, she had

made of it.  She was, during this time, a near neighbor of Mr. and Mrs. Cook, and on terms of intimacy with them, and regarded and treated them as her nearest friends.

The weight of evidence is in favor of the conclusion that when she executed the will she understood the nature and character of her act and comprehended its consequences, and the determination of the surrogate that she was competent to execute the instrument cannot be disturbed.

The decree must be affirmed, with costs to be paid by the contestants.

PRATT and DYKMAN, JJ., concurred.

Decree affirmed, with costs to be paid by contestants.

---

THE FARMERS' LOAN AND TRUST COMPANY, as Trustee, Respondent, *v.* THE NEW YORK AND NORTHERN RAILWAY COMPANY and Others, Respondents; and ARTEMAS HOLMES and Another, Appellants.

*Mortgage foreclosure — a misapplication of its earnings by the mortgagor is not a defense thereto — rights of stockholders of a corporation, as bondholders thereof — rights of a competing corporation as a bondholder — a provision for default in a mortgage construed — allegation as to request to foreclose — duties and rights of the majority stockholders in a corporation.*

In an action brought to foreclose a mortgage given by a railroad corporation a defense was interposed that the earnings of the mortgagor had been misapplied in order to bring about a default.

*Held,* that such fact did not constitute a defense as against the trustee named in such mortgage or any bondholder ;

That it was not a ground of complaint to the mortgagor or its stockholders that there had been a misapplication of the mortgagor's earnings.

It is in no respect illegal for a stockholder in a corporation or its officers or directors to purchase and hold its bonds or to enforce the payment thereof in the usual way.

A corporation holding bonds of a competitor has the right, so long as it violates no duty owing to a corporate mortgagor or its stockholders, to avail itself of all the stipulations of the contract contained in such bonds and the mortgage given as collateral thereto, although its object may be to cause a foreclosure of such mortgage and to become the purchaser of the property at the sale ; such pur-